Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff SEAN GORECKI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SEAN GORECKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HOBBY LOBBY STORES, INC., an Oklahoma corporation;<br><br>Defendant. | CASE No.: 2:17-cv-01131-JFW-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>*[Filed Concurrently with Plaintiff's Request for Judicial Notice; Proposed Order]*<br><br>Judge: Hon. John F. Walter<br>Date: June 12, 2017<br>Time: 1:30 p.m.<br>Ctrm: 7A |

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

I.    INTRODUCTION…………………………………………………………1

II.   ARGUMENT………………………………………………………………4

    A.   Legal Standard……………………………………………………..4

    B.   Defendant Misstates and Takes Out of Context Material Elements
       of the Complaint and First Amended Complaint and
       Attacks a "Straw Man"……………………………………………5

    C.   The DOJ Has Long Asserted the Existence of Its General
       Implementing Regulations Prohibits Discrimination on the
       Basis of Disability Even in the Absence of Specific Technical
       Guidelines………………………………………………………….8

    D.   The Injunction Sought by Plaintiff Calls for
       Defendant's Website to "Comply with the ADA by
       Making the Website Accessible."……………………………...10

    E.   The *AMC* Decision Favors Plaintiff…………………………….13

    F.   No Court Has Held an Injunction Requiring Website Accessibility
       Under the ADA Violates Due Process; To the Extent the DOJ
       Previously Indicated Support for WCAG 2.0 AA as a Standard that is
       Relevant to the Potential Eventual Determination of What Defendant
       Knew and When They Knew it Regarding the DOJ's Requirements for
       Website Accessibility but the FAC Does Not Call for More than
       Accessibility……………………………………………………..14

        1.   The Domino's Court Erred by Failing to Give Substantial
          Deference to the DOJ's Interpretation of the ADA.  The DOJ's
          Interpretation Is Entitled to Skidmore Deference………………14

        2.   The DOJ Has Actively and Consistently Enforced the ADA to
          Commercial Websites to Conform to at Least WCAG 2.0 Level
          AA Success Criteria……………………………………………..17

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

3.   The Dominos Court Abused its Discretion by Applying the
Primary Jurisdiction Doctrine...…………………………………21

4.   The Dominos Court's References to Violation
of Due Process are Dictum………………………………………..23

III.   SHOULD THE COURT GRANT DEFENDANT'S
MOTION TO DISMISS, PLAINTIFF SHOULD BE
GRANTED LEAVE TO AMEND……………………………………..24

IV.   CONCLUSION………………………………………………………24

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................4, 5

*Barker v. Riverside County Office of Education*,
  584 F.3d 821 (9th Cir. 2009) ................................................................................4

*Baughman v. Walt Disneyworld Company*,
  685 F. 3d 1131-36 (9th Cir. 2012) .......................................................................3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................4

*Carnation Co. v. Pacific Westbound Conference*,
  383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966) .........................................22

*Citing United States v. AMC Entertainment, Inc.*,
  549 F. 3d 768 -70 (9th Cir. 2008) ...........................................................2, 12, 13

*DeCarlo v. Fry*,
  141 F. 3d 56 (2d Cir. 1998) ................................................................................24

*Fortyune v. City of Lomita*,
  766 F. 3d 1098 (9th Cir. 2014) ................................................................2, 12, 13

*Lara v. Cinemark USA, Inc.*,
  No. EP-97-CA-502-H (W.D. Tex.) .....................................................................13

*Mitchell Coal & Coke Co. v. Pennsylvania R. Co.*,
  230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472 (1913)...........................................22

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*,
  Case 3:15-cv-30023-MGM [ECF #33], (D. Mass. June 25, 2015) ................14, 22

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*,
  Case 3:15-cv-30023-MGM, 2016 WL 3561622 (D. Mass. Feb. 9,
  2016) (Robertson, Mag. J.)...........................................................................21, 22

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al.,*
  Case 3:15-cv-30023-MGM, 2016 WL 6540446 (D. Mass. Nov. 3,
  2016) (Mastroianni, J.)................................................................................22

*Nat'l Ass'n of the Deaf v. Netflix, Inc.,*
  869 F. Supp. 2d 196 (D. Mass. 2012)..................................................9, 16

*Nat'l Fed'n of the Blind v. Scribd Inc.,*
  97 F.Supp.3d 565 (D. Vt. 2015) ...........................................................1, 16

*Nat'l Fed'n of the Blind v. Scribd, Inc.,*
  98 F. Supp. 3d 565 (D. Vt. 2015) ...............................................................14

*National Fed. of the Blind, et al. v. HRB Digital LLC, et al.,*
  No. 1:13-cv-10799-GAO (D. Mass. filed April 8, 2013)....................16, 17

*National Federation of the Blind v. Target Corp.,*
  452 F. Supp. 2d 946 (N.D. Cal. 2006).........................................11, 12, 23

*New v. Lucky Brand Dungarees Stores, Inc.,*
  No. 14-CV-20574 (S.D. Fla. case filed 2/14/14)..................................9, 10

*Robles v. Domino's Pizza, LLC*
  (Court of Appeals Docket #: 17-55504) (NOA April 12, 2017) ...........14

*Robles v. Dominos Pizza, LLC*
  (Case No.: 2:16-cv-06599-SJO-FFM) ....................................................14

*Shields v. Walt Disney Parks and Resorts US, Inc.,*
  279 F.R.D. 529 (C.D. Cal. 2011)........................................................20, 21

*Silva v. Bieluch,*
  351 F.3d 1045 (11th Cir. 2003) ...............................................................24

*Skidmore v. Swift & Co.,*
  323 U.S. 134 (1944)..................................................................................14

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ...................................................................5

*United States v. AMC Entm't, Inc.,*
  245 F. Supp. 2d 1094 (C.D. Cal. 2003)............................8, 12, 13, 17

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Statutes**

42 U.S.C. §12182(a) ..................................................................11

42 U.S.C. § 12182(a)(2)(A)(iii) .................................................24

42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iii) .............................16

ADA, California's Unruh Civil Rights Act .................................11

Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ..........................2

California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.*..............................11

*DOJ Has Actively and Consistently Enforced the ADA* ...............................17

Unruh Civil Rights Act, California Civil Code § 51 *et seq.*.........................2

**Other Authorities**

28 C.F.R. § 36.201(a)...........................................................1, 8, 17

28 C.F.R. §§ 36.201(a), 36.303(a), (c)(1)(ii) .............................16

DOJ's Civil Rights Division's website at
    https://www.ada.gov/enforce_current.htm ...........................18

Fed. R. Civ. P. Rule 8(a) ...........................................................4

Federal Rule of Civil Procedure 8(a)(2) ....................................4

Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037, 1055 (1964) .................22

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al* ........................15

Rule 8 ........................................................................................4

Rule 12(b)................................................................................11

Rule 12(b)(6) ............................................................................5

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

# I. INTRODUCTION

"Now that the Internet plays such a critical role in the personal and professional lives of Americans, excluding disabled persons from access to covered entities that use it as their principal means of reaching the public would defeat the purpose of this important civil rights legislation [*i.e.*, the Americans with Disabilities Act of 1990]." *Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F.Supp.3d 565, 575 (D. Vt. 2015).

Defendant Hobby Lobby Stores, Inc. ("Defendant") is a for-profit company that owns, operates, and maintains places of public accommodation, the Hobby Lobby retail stores, throughout the United States and in the Central District of California.  (First Amended Complaint ("FAC"), Dkt. 16 at ¶ 9).  Defendant provides to the public a website service known as HobbyLobby.com, which is heavily integrated with Defendant's actual, physical retails stores and is a service, privilege, and advantage of Defendant.  28 C.F.R. § 36.201(a). (FAC ¶ 12)

Defendant, however, maintains HobbyLobby.com in such a way that makes it inaccessible to Plaintiff Sean Gorecki ("Plaintiff"), a blind individual, and, thus, Defendant is unlawfully discriminating against Plaintiff based on his disability.

Specifically, Defendant maintains HobbyLobby.com in such a way that it contains *numerous* accessibility barriers including, but not limited to, several slide-shows on the home page with important web content that cannot be navigated or read by Plaintiff's screen reader, at least one cursor trap where the Plaintiff's cursor becomes fixed and he cannot tab through, a store locator that is unusable and provides inaccurate information, edit fields that are not labeled so as to be identified by a screen reader rendering the user unable to perform or even identify the function intended by the website, and the inability of a screen reader user to complete a purchase.  (FAC ¶ 24)  The foregoing access barriers prevent Plaintiff from full and equal enjoyment of the services and privileges offered by Defendant.

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Based thereon, Plaintiff has alleged causes of action based on Defendant's violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.* and the Unruh Civil Rights Act ("UNRUH"), California Civil Code § 51 *et seq.*

Defendant has moved to dismiss Plaintiff's Complaint based on the contention that requiring HobbyLobby.com to be "fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people" (FAC ¶ 2) would violate Defendant's due process rights because "for years, the U.S. Department of Justice ("DOJ") has declined to implement any regulations regarding ADA compliance and website accessibility".  Motion to Dismiss, Dkt. No 35, page 1. ("Motion")

Such arguments are not supported by the straightforward reading of the ADA, case law addressing the application of due process principles to the ADA, and the DOJ's clear and unambiguous position that the ADA mandates that commercial websites be equally accessible to all individuals, both disabled and non-disabled equally. 75 Fed. Register 43460, 43464 (July 26, 2010) (expressly stating that "the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations.'")

The instant motion, based on a single flawed theory, is premature as well.  This because Defendant's due process argument relates only to the remedies that may be imposed **later** in the case, should Plaintiff prevail.  *Fortyune v. City of Lomita*, 766 F. 3d 1098 (9th Cir. 2014) (denying appeal of district court's refusal to grant motion to dismiss on due process grounds) at FN. 13 ("Any further consideration of the City's due process argument would be premature because due process constrains the remedies that may be imposed.  *See* AMC, 549 F. 3d at 768 -70.  If Fortyune prevails, when crafting a remedy, the district court will have to consider carefully what level of accessibility the City should have known was legally required for diagonal stall on-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

street parking.") (Citing *United States v. AMC Entertainment, Inc.*, 549 F. 3d 768 -70 (9th Cir. 2008) ("AMC")).

Instead of Defendant using its time and resources to ensure that *all* of its customers, both physically able and disabled, can equally use and enjoy its website, Defendant instead has chosen to move this Court to dismiss Plaintiff's complaint, essentially arguing that it can and should be able to freely discriminate (or at least make NO effort to avoid doing so) against blind individuals who are evidently less than welcome to patronize Defendant's retail stores.  This attitude toward the interpretation of the mandates of the ADA and its important civil rights objectives has been condemned by the Ninth Circuit.  *Baughman v. Walt Disneyworld Company*, 685 F. 3d 1131-36 (9th Cir. 2012) (*Stating*: "Read as Disney suggests, the ADA would require very few accommodations indeed. After all, a paraplegic *can* enter a courthouse by dragging himself up the front steps, *see Tennessee v. Lane,* 541 U.S. 509, 513–14, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), so lifts and ramps would not be 'necessary' under Disney's reading of the term. And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in, and we are disappointed to see such a retrograde position taken by a company whose reputation is built on service to the public.  Disney's (and the district court's) error lies in fixating on a single word in the statute rather than reading all of the relevant words together. *See FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132–33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). The ADA guarantees the disabled more than mere access to public facilities; it guarantees them "full and equal enjoyment." 42 U.S.C. § 12182(a).)  Simply put, because Defendant's motion is unsupported by the facts pled and applicable case law it should be denied.

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

# II. ARGUMENT

## A.  Legal Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8(a) of the Fed. R. Civ. P. "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

"[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true." *Iqbal*, 556 U.S. at 678. "All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim." The Rutter Group, Federal Civil Procedure Before Trial ¶ 9:213, at 9-82 (2011); *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. 2d. 2d 90 (1974)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* "The standard at th[e] [motion to dismiss] stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Iqbal*, 556 U.S. at 681.

**B.    Defendant Misstates and Takes Out of Context Material Elements of the Complaint and First Amended Complaint and Attacks a "Straw Man"**

As discussed in the prior section, in the context of a Motion to Dismiss the allegations of the Complaint are at issue.  It is therefore critical that the allegations of the challenged pleading are considered as stated.  Defendant in the motion misstates the allegations of the Complaint and the First Amended Complaint.  Defendant states:

> "In his initial pleading, Plaintiff sought to impose liability under the ADA for Hobby Lobby's alleged failure to comply with a specific set of 'standards' set by a private, non-governmental organization, the World Wide Web Consortium ("W3C"), known as version 2.0 of W3C's Web Content Accessibility Guidelines, or the 'WCAG 2.0 Guidelines.' (Complaint ¶ 13.)"

Motion, page 1.

Defendant's statement is false.  Paragraph 13 of the Complaint states:

> "13.   In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or  displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon."

**Manning Law, APC**
**4667 MacArthur Blvd., Ste. 150**
**Newport Beach, CA 92660**

Complaint ¶ 13.

It is critical that the Court take note of the effort by Defendant to misstate and twist the allegations of the Complaint and the FAC because by doing so Defendant attempts to establish the foundation for the false narrative underlying the motion; that is, that Plaintiff seeks to force Defendant to comply with "a specific set of standards" set by a private, non-governmental organization, the World Wide Web Consortium ("W3C")" which Defendant argues are not the law because they have not been formally adopted by the DOJ. The reality has since the inception of this case been something different, and the allegations of both the Complaint and FAC, are clear that Plaintiff seeks only accessibility of Defendant's website under the general mandate of the ADA.

Reference to the standards published by the W3C, or the WCAG 2.0 Guidelines, in the Complaint are limited to the observation that most companies that endeavor to offer accessible website content adopt and follow these standards and suggestions that these guidelines can be useful as a **source of reference** by Defendant in the process of making its website accessible.  The Complaint sets forth in pertinent parts:

> "16.  The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people as well as other persons who require screen-reading technology to use computers and access the internet. These guidelines are adopted and followed by most large business entities who actively seek to ensure their websites are accessible to people, including the blind and visually-impaired users.
>
> ...      ...      ...

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

"31.   Because Defendant's website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with the ADA by **making the website accessible**, using the success criteria outlined in the **WCAG 2.0 guidelines as a source of reference**. Plaintiff seeks that this permanent injunction require Defendant to cooperate with the Agreed Upon Consultant to:

a.     Train Defendant's employees and agents who develop the HobbyLobby.com website on accessibility and compliance with the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

b.     Regularly check the accessibility of Defendant's website to maintain its accessibility as required by the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

c.     Regularly test end-user accessibility of the website by blind or visually-impaired screen-reader users to ensure that Defendant's website is accessible to blind and visually-impaired individuals who would access the website with screen-reading technology; and,

d.     Develop an accessibility policy that is clearly disclosed on its website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and identified the accessibility-related problem."

Complaint, Dkt. 1, ¶ 16, 31 (emphasis added).

After meeting and conferring with Defendant's counsel regarding the allegations of the Complaint, it being clear that Defendant either misunderstood the import of the reference to the WCAG 2.0 guidelines or understood but chose to mischaracterize same, Plaintiff filed the FAC.  The FAC again is substantially similar

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

7

to the Complaint, seeking generally to require accessibility of the Defendant's website.  However, the FAC does not identify WCAG 2.0 as a "source of reference" for accessibility.  *See* FAC, Dkt. 16, ¶ 33.  Despite the elimination of any reference to the WCAG 2.0 guidelines in the FAC, Defendant continues to protest what they now characterize as "thinly-veiled references" to same.  Nonetheless the FAC is clear, it seeks to enforce the basic mandate of the ADA, alleging:

> "18.   The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services. *See* 28 C.F.R. §36.303(a), (b) and (c)(ii). Commercial websites that are not accessible for blind and visually-impaired individuals using screen-readers and keyboards only, violate this basic mandate of the ADA. *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006). "

FAC, Dkt. 16, ¶ 18

## C.   The DOJ Has Long Asserted the Existence of Its General Implementing Regulations Prohibits Discrimination on the Basis of Disability Even in the Absence of Specific Technical Guidelines

The DOJ has affirmatively issued **_general_** ADA implementing regulations pursuant to the ADA, which prohibit discrimination on the basis of disability: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201(a); *United States v. AMC Entm't, Inc.*, 245 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003) ("After a notice-and-comment period, in July 1991, the DOJ promulgated

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

regulations implementing Title III of the ADA. *See generally* 28 C.F.R., Pt. 36; 56 F.R. 35544 (July 26, 1991)").

The DOJ's reliance on such general regulations in the face of changes in technology is not surprising given that "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology." *Netflix*, 869 F. Supp. 2d at 200-01 (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").

In *New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 (S.D. Fla. case filed 2/14/14), on April 10, 2014, the DOJ filed a Statement of Interest brief in an ADA case brought against the operator of a clothing retail store with point-of-sale devices ("POS"), in which the DOJ took the position that "**title III's general prohibition against discrimination on the basis of disability** and its requirements to provide auxiliary aids and services where necessary to ensure effective communication establish obligations under the ADA with respect to [defendant's] use of POS devices to provide payment services to its customers." *New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 [ECF No. 19 at 6] (S.D. Fla. Apr. 10, 2014) (emphasis added).

Significantly, the DOJ stated that:

> "[T]he absence of specific technical standards or regulatory provisions that directly address a public accommodation's obligation to provide accessible POS devices in no way establishes that the accessibility of POS devices is outside the scope of title III, especially where current regulations incorporate specific obligations for effective communication. *See* 28 C.F.R. § 36.303(a). Until the process of establishing specific technical requirements for POS devices is complete, public accommodations have a degree of flexibility in complying with title III's more general requirements of

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

nondiscrimination and effective communication—but they still must comply."

*New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 [ECF No. 19 at 8] (S.D. Fla. Apr. 10, 2014) (emphasis added).

The DOJ also stated:

> "[T]he Department has long considered websites to be covered by title III **despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards**. *See generally* Statement of Interest of the United States, Nat'l Assoc. of the Deaf v. Netflix, Inc., 869 F. Supp. 2d 196 (D. Mass 2012), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); see also Consent Decree, Nat'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc., No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website)."

*New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 [ECF No. 19 at 7] (S.D. Fla. Apr. 10, 2014) (emphasis added). Thus, the DOJ's position that the ADA's implementing regulations already cover commercial websites is based on such general nondiscrimination regulations. Significantly, the Defendant's arguments in the Motion to Dismiss ignore the existence of such general regulations.

## D.   The Injunction Sought by Plaintiff Calls for Defendant's Website to "Comply with the ADA by Making the Website Accessible."

Defendant urges that "Plaintiff's proposed injunction would violate due process." Motion, P. 6. Defendant objects to Plaintiff's reference to "guidelines which would allow all functions of the website to be performed using a keyboard." FAC ¶ 33. Again, under the applicable standard on a motion to dismiss, the allegations of the FAC must be taken as true and all inferences drawn in favor of Plaintiff. Indeed, if Plaintiff should prevail, and the Court is required to fashion an injunction to effectuate accessibility of Defendant's website, some standard, guideline

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

or principle will be applied.  Reference generally to "guidelines" as in the FAC cannot be deemed to cause the complaint to fail to state a claim and Defendant cites no authority for this proposition.

In a very similar matter with analogous facts, *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) (Patel, J.), the Northern District of California was similarly faced with a motion to dismiss a complaint filed by visually-impaired customers seeking declaratory, injunctive, and monetary relief, and alleging that the website of retail giant, Target Corporation ("Target"), was inaccessible to the visually-impaired in violation of the ADA, California's Unruh Civil Rights Act, and California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.* The plaintiff's complaint survived Target's motion to dismiss. The district court specifically declined to dismiss any of the plaintiff's causes of action, stating "the Ninth Circuit has stated that the 'ordinary meaning' of the ADA's prohibition against 'discrimination in the enjoyment of goods, services, facilities or privileges, is 'that *whatever* goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services.'" *Target Corp.*, 452 F. Supp. 2d at 955 (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113 (9th Cir. 2000)).

There, just like here, Target was denying equal enjoyment of its website to visually-impaired individuals including by failing to provide alternative text. *Target Corp.*, 452 F. Supp. 2d at 949-50. The court refused to dismiss the plaintiff's complaint at the Rule 12(b) stage because Target failed to provide an equally accessible service and privilege of its public accommodations:

"[I]t is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's 'full enjoyment' of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal 'participation' or the

provision of "separate benefit[s]" are actionable under Title III." *Id.* at 954 (citing 42 U.S.C. § 12182(b)(1)(A)).

Defendant's due process arguments are premature as well because they relate only to the remedies that may be imposed **later** in the case, should Plaintiff prevail. *See Fortyune v. City of Lomita*, 766 F. 3d 1098 (9th Cir. 2014) (denying appeal of district court's refusal to grant motion to dismiss on due process grounds) at FN. 13 ("Any further consideration of the City's due process argument would be premature because due process constrains the remedies that may be imposed. [citation]. If Fortyune prevails, when crafting a remedy, the district court will have to consider carefully what level of accessibility the City should have known was legally required for diagonal stall on-street parking.")(*Citing United States v. AMC Entertainment, Inc.*, 549 F. 3d 768 -70 (9th Cir. 2008).

Here, if Plaintiff prevails, due process will require that the Court consider what level of accessibility Defendant should have known was required for its website based upon the timing and content of various statements and filings by the DOJ and Congress. *See infra* at section E.

In AMC, the Ninth Circuit observed that, "[d]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." Id. at 768. The *AMC* court concluded that as little as the filing of an amicus brief in separate litigation by the DOJ could provide adequate prospective notice of prohibited conduct. *Id.* at 770; *Fortyune*, 766 F.3d at 1098. On the subject of the DOJ's position on website accessibility, the FAC alleges that, "[t]he Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies." FAC ¶ 19. Statements by the DOJ or Congress that could provide adequate prospective notice of prohibited conduct include those set forth *infra* at section F.

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**E.**    **The *AMC* Decision Favors Plaintiff**

In *AMC*, the Ninth Circuit, while reviewing a detailed injunctive order issued by the lower court, held that *AMC* was not on fair notice of the specific regulation regarding line of sight viewing angles in movie theatres *until*, at the earliest, the DOJ's publication of its position in the 1998 amicus brief it filed in *Lara v. Cinemark USA, Inc.*, No. EP-97-CA-502-H (W.D. Tex.).  The significance of the *AMC* court's ruling is that the detailed injunctive order, that was the subject of the appeal, addressed the retroactive application of technical requirements to theatres built prior to the DOJ's 1998 amicus brief it filed in *Lara*.  Not at issue were the theatres built after the *Lara* amicus brief due to the court's finding that *AMC* was on notice of what was required of it following the filing of the *Lara* amicus brief.

The court observed that, "[d]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *AMC*, 549 F. 3d at 768.  The *AMC* court concluded that as little as the filing of an amicus brief in separate litigation by the DOJ could provide adequate prospective notice of prohibited conduct.  *AMC*, 549 F. 3d at 770; *Fortyune*, 766 F.3d at 1098.The filing of the *Lara* amicus brief served as a line of demarcation with regard to notice.

On the subject of the DOJ's position on website accessibility, the FAC alleges that, "[t]he Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies." FAC ¶ 19.  Statements by the DOJ or Congress that could provide adequate prospective notice of prohibited conduct include those set forth *infra* at section F.

**F.**    **No Court Has Held an Injunction Requiring Website Accessibility Under the ADA Violates Due Process; To the Extent the DOJ Previously Indicated Support for WCAG 2.0 AA as a Standard that is Relevant to the Potential Eventual Determination of What Defendant Knew and When They Knew it Regarding the DOJ's Requirements for Website Accessibility but the FAC Does Not Call for More than Accessibility.**

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Defendant claims a similar case filed by Plaintiff's counsel was dismissed on "these very same due process grounds" – this is not accurate.  Motion, P. 6.   The court in *Robles v. Dominos Pizza, LLC*, (Case No.: 2:16-cv-06599-SJO-FFM)("Dominos") granted the defendant's motion to dismiss without prejudice on primary jurisdiction grounds, not due process (the "Order").   Perhaps most important for the resolution of the instant motion, the Dominos complaint varied materially from the FAC here.  As discussed below, the ruling in Dominos is not binding authority on this court, it is unpersuasive and constitutes error by that court and the Dominos Order is the subject of a pending appeal.  *Robles v. Domino's Pizza, LLC* (Court of Appeals Docket #: 17-55504) (NOA April 12, 2017).

    **1.**    ***The Domino's Court Erred by Failing to Give Substantial Deference to the DOJ's Interpretation of the ADA.  The DOJ's Interpretation Is Entitled to Skidmore Deference.***

The Dominos Court "conclude[d] that little or no deference is owed to statements made by the DOJ through documents filed in the course of litigation with regulated entities." (Order at 8.)  Not so.  The DOJ's interpretation of the ADA is entitled to *Skidmore* deference.  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp. 3d 565, 575 (D. Vt. 2015) (applying *Skidmore* deference to the DOJ's "conclusion that the ADA applies to websites covered by one of the categories in the statute.").

The DOJ's position that the ADA currently covers commercial websites is beyond dispute.  In *Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*, Case 3:15-cv-30023-MGM [ECF #33], (D. Mass. June 25, 2015) which raised a Title III ADA claim, the DOJ filed a Statement of Interest opposing Harvard University's motion to dismiss for failure to state a claim and motion to dismiss on jurisdictional grounds.  In particular, the DOJ noted that the ADA:

        "*[C]urrently* obligate[s] Harvard to provide effective communication to ensure equal access to its online programming services, and resolution of Plaintiffs' claim

involves a straightforward application of longstanding statutory and regulatory requirements.  For more than two decades, federal courts have resolved effective communication claims brought under the ADA . . . in a wide range of contexts, including claims alleging unequal access to goods, benefits and services provided through websites or other electronic media."

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*, *supra* ("Statement of Interest – Harvard") at 2 (emphasis in original). (www.ada.gov/briefs/harvard_soi.pdf)

The DOJ described "the heart of this case" as "a straightforward claim that Harvard failed to provide auxiliary aids or services necessary to ensure effective communication and equal access to Harvard's online programming."  *Id.* at 8. Significantly, the DOJ urged the court to "reject Harvard's attempt to convert a clear-cut ADA claim into something dependent on future rulemaking."  *Id.* at 11.  The DOJ also stated in relevant part as follows:

"Moreover, since the ANPRM was issued in 2010, this Court and other courts have allowed litigation of title III claims alleging the failure to provide equal access to the web-based services of a public accommodation. *See Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196, 205 n.2 (D. Mass. 2012); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 2015 U.S. Dist. LEXIS 34213 *26 (D. Vt. March 19, 2015). The fact that the regulatory process is pending does not support Harvard's claim that its online programming is not currently covered by title III requirements."
Statement of Interest– Harvard at 11.

Directly to the contrary, and as explained in the Department's ANPRM:

"The Internet as it is known today did not exist when Congress enacted the ADA and, therefore, neither the ADA nor the regulations the Department promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Websites over the Internet.*" 75 Fed Reg. 43,460, 46,463 (emphasis added). *See also Netflix*, 869 F. Supp. 2d at 200 (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public.") (quoting *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.*, 37 F.3d 12, 20 (1st Cir. 1994)). This Court is thus well-equipped to resolve Plaintiffs' legal claim, and should therefore reject Harvard's attempt to convert a clear-cut ADA claim into something dependent on future rulemaking."

Statement of Interest – Harvard at 10-11. (emphasis in original)

The position that the currently-existing ADA does, in fact, cover the accessibility of commercial websites for sight-impaired users, *see* 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iii); 28 C.F.R. §§ 36.201(a), 36.303(a), (c)(1)(ii), is a position that the DOJ has consistently maintained in public dating back to at least 1996. *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 574 (D. Vt. 2015) (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide *effective communication*, regardless of whether they generally communicate through print media, audio media, or *computerized media such as the Internet*.") (emphasis added); Statement of Interest of the United States of America in *New v. Lucky Brands Dungarees Stores, Inc.*, case no. 1:14-cv-20574-UU [ECF #19 at pg. 7] (S.D. Fla. Apr. 10, 2014) ("[T]he Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements currently in the regulation or ADA Standards."); *see also National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) ("The ADA covers the services 'of' a public accommodation, not services 'at' or 'in' a public accommodation."); *National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO (D. Mass. filed April 8, 2013).

The DOJ's position is based on the existence of its general implementing regulations prohibiting discrimination on the basis of disability. The DOJ has affirmatively issued *general* ADA implementing regulations pursuant to the ADA,

Manning Law, APC
4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660

1   which prohibit discrimination on the basis of disability: "No individual shall be

2   discriminated against on the basis of disability in the full and equal enjoyment of the

3   goods, services, facilities, privileges, advantages, or accommodations of any place of

4   public accommodation by any private entity who owns, leases (or leases to), or

5   operates a place of public accommodation." 28 C.F.R. § 36.201(a); *United States v.*

6   *AMC Entm't, Inc.*, 245 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003) ("After a notice-and-

7   comment period, in July 1991, the DOJ promulgated regulations implementing Title

8   III of the ADA. *See generally* 28 C.F.R., Pt. 36; 56 F.R. 35544 (July 26, 1991)").

9          **2.     *The DOJ Has Actively and Consistently Enforced the ADA to***

10                  ***Commercial Websites to Conform to at Least WCAG 2.0 Level AA***
                    ***Success Criteria***

11         The DOJ's enforcement efforts consistently ensure conformance with WCAG

12   2.0 Level AA success criteria.  Although the Dominos Court's Order states that the

13   DOJ has failed to "offer[] meaningful guidance" on the topic of what commercial

14   websites should be measured against in order to evaluate their accessibility for the

15   visually-impaired, (Order at 8), the DOJ has actively enforced the ADA as to

16   commercial websites, and consistently ensured that commercial website owners and

17   operators ensure that their websites conform to at least WCAG 2.0 Level AA Success

18   Criteria.  *See, e.g.*, *National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*, No.

19   1:13-cv-10799-GAO, Consent Decree [ECF #60 at pg. 5] (D. Mass. Mar. 24, 2014)

20   ("By January 1, 2015, H&R Block shall ensure that www.hrblock.com . . . conform

21   to, at minimum, the Web Content Accessibility Guidelines 2.0 Level A and AA

22   Success Criteria."); *see also* Settlement Agt. Between United States of America and

23   Ahold U.S.A. Inc. and Peapod, LLC, DJ #202-63-169, ¶ 12(b) ("By September 30,

24   2015, (the "Website Conformance Date"), Peapod shall ensure that www.peapod.com

25   conforms to WCAG 2.0 AA."); Settlement Agt. Between the United States of

26   America and edX Inc., DJ #202-36-255, ¶ 18(a) ("Within eighteen (18) months after

27   the Effective Date of this Agreement, edX shall [ensure that]: www.edx.org . . .

28

**Manning Law, APC**
**4667 MacArthur Blvd., Ste. 150**
Newport Beach, CA 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

conform with, at minimum, the Web Content Accessibility Guidelines ("WCAG") 2.0 AA, published by the Web Accessibility Initiative of the World Wide Web Consortium ("W3C").").

Besides the aforementioned Consent Decree involving H&R Block, and the settlement agreements involving Peapod, LLC, and edX Inc., the DOJ has similarly relied upon WCAG 2.0 AA as an appropriate measure to ensure compliance with the ADA relating to private websites in the following settlement agreements[1] as follows:

- Settlement Agt. – *Nat'l Fed. of the Blind, et al. v. Law School Admissions Council* dated Apr. 27, 2011 ("LSAC shall provide "Full and Equal Access" to the lsac.org website as provided herein no later than September 1, 2011 ("Completion Date") and continuing thereafter for the term of this Agreement. "Full and Equal Access" means that www.lsac.org meets the nonvisual requirements of WCAG 2.0, level AA and that blind guests using screen-reader software may acquire the same information and engage in the same transactions as are available to sighted guests with substantially equivalent ease of use.");

- Settlement Agt. Between the United States of America, Louisiana Tech University, and the Board of Supervisors for the University of Louisiana System Under the Americans with Disabilities Act, DJ #204-33-116, ¶¶ 13(a), 14 & Ex. 1 ("Each college, department, program, unit and professor that controls or operates a web page(s) available to students, prospective students, or applicants will develop and implement a plan to make pre-existing web pages posted since January 2010 comply with WCAG 2.0 AA by December 1, 2014.");

[1] The settlement agreements are available for viewing on the DOJ's Civil Rights Division's website at https://www.ada.gov/enforce_current.htm.

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

- Settlement Agt. Between the United States of America and the National Museum of Crime and Punishment dated Jan. 13, 2015 ¶ 21 ("Within 120 days of the effective date of this agreement, the NMCP shall ensure that its website conforms to the Level AA Success Criteria and Conformance Requirements of the Web Content Accessibility Guidelines ("WCAG") 2.0 (Dec. 11, 2008), published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG."); and

- Settlement Agt. Between the United States of America and the Newseum, Inc. Under Title III of the Americans with Disabilities Act, DJ #202-16-190, ¶ 20 ("The Newseum, Inc. shall ensure that the visual and audio contents of its website conform to the Level A and Level AA Success Criteria and Conformance Requirements of the Web Content Accessibility Guidelines ("WCAG") 2.0 (Dec. 11, 2008), published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG/.").

In addition, the DOJ in its Justice Blogs on May 12, 2015 highlighted the fact that the DOJ has entered into several agreements requiring employers to ensure that their online job application websites are accessible in compliance with WCAG 2.0 AA, which it described as "industry guidelines for making web content accessible."[2]

Thus, under the DOJ's explicit guidance, which is entitled to substantial deference, it is clear that:

- Websites are, in fact, covered by Title III of the ADA regardless of whether specific, technical requirements for websites are in the DOJ's regulations or the ADA Standards;

---

[2] The Justice Blogs can be searched at the link at http://www.justice.gov/justice-blogs?promote=All

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

- Current regulations incorporate specific obligations for effective communication with disabled persons such as the visually impaired;

- The DOJ has consistently relied upon WCAG 2.0 Level AA Success Criteria as an appropriate measure to ensure that commercial websites are accessible to the visually impaired; and

- Until the process of establishing specific technical requirements is complete for certain topics, public accommodations must still comply with title III's more general requirements of nondiscrimination and effective communication.

If the DOJ has the legal authority to currently enforce the ADA against owners and operators of commercial websites to ensure that such websites are accessible to visually-impaired persons as measured against the WCAG 2.0 Level AA Success Criteria, then there is no cogent reason why visually-impaired persons, who have Article III standing to sue, cannot enforce the ADA to address and remedy their own personal harm arising from barriers encountered on commercial websites as measured against the WCAG 2.0 Level AA Success Criteria.

*Shields v. Walt Disney Parks and Resorts US, Inc.* supported the Plaintiff's position in Dominos as well.  The Dominos Court's analysis omitted addressing *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529 (C.D. Cal. 2011). In that case, the plaintiffs alleged that they had problems using screen reader software on Disney's website.  The plaintiffs prevailed on a contested motion for class certification involving a website class comprised of visually impaired individuals.

Significantly, the district court in *Shields* rejected as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites.  The district court stated, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the

visually impaired." *Id.* at 559.  That case eventually resolved via a class action settlement in which Disney agreed to follow WCAG 2.0 AA to resolve the matter.

Thus, *Shields* demonstrates the unwillingness of federal courts to treat the ADA as currently unenforceable in regards to visually-impaired persons seeking full and equal access to commercial websites unless and until further regulations are promulgated at some point in the future.

### 3.  The Dominos Court Abused its Discretion by Applying the Primary Jurisdiction Doctrine.

Despite citing and relying upon the magistrate judge's Report and Recommendation in *Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) [ECF #50], the Dominos Court did not address the fact that such magistrate judge elsewhere stated the following in her detailed Report and Recommendation as follows:

> "[T]here is no inherent reason for concluding that DOJ has any specialized technical expertise regarding internet accessibility. Moreover, the ANPRM counsels the opposite conclusion. In it, DOJ seeks input from "experts in the field of computer science, programming, networking, assistive technology, and other related fields" to assist it in formulating regulations addressing website accessibility. 75 Fed. Reg. at 43,464. If DOJ had specialized technical expertise, it would not need to solicit it from the outside. Even if the DOJ has acquired some measure of expertise based on input from outside experts in response to the ANPRM issued nearly 6 years ago, '[t]he doctrine does not require that all claims touching on an agency's expertise first be decided by the agency.'  *See County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1251 (9th Cir. 2009), *rev'd on other grounds*, *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110 (2011).  To the extent that the court needs help unraveling intricate, technical facts governing website and online video accessibility, it, too, can hear from experts."

*Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *17 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.).

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

Notably, the district court in the *Harvard Univ.* decision adopted the magistrate judge's report and recommendation in its entirety. *Nat'l Ass'n of the Deaf v. Harvard Univ., et al.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.). Thus, the magistrate judge's analysis in the foregoing decision, including that the primary jurisdiction doctrine be "invoked sparingly", which the district court adopted in *Harvard Univ.* stands in stark contrast to the Dominos Court's Order. Plaintiff submits that the magistrate judge's reasoning and rationale for not applying the primary jurisdiction doctrine is more persuasive than the Dominos Court's analysis, the latter of which completely omitted addressing the foregoing analysis of Magistrate Judge Robertson.

Moreover, "[r]eferral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, <u>if the parties would not be unfairly disadvantaged</u>, to dismiss the case without prejudice. *See Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 222–223, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966); *Mitchell Coal & Coke Co. v. Pennsylvania R. Co.*, 230 U.S. 247, 266–267, 33 S.Ct. 916, 924–925, 57 L.Ed. 1472 (1913); Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037, 1055 (1964)." (emphasis added).

If the ADA applies to websites, which – based the general mandate of the ADA, repeated Statements of Interest by the DOJ, and case law, as described in detail herein – is a resounding "yes," then deferring this issue unfairly disadvantages Plaintiff. Deferral would result in continued discrimination for Plaintiff and flies in the face of the ADA's general mandate and purpose if he must now seek clarification by an administrative body, Congress, the attorney general, or all three entities.

### 4. The Dominos Court's References to Violation of Due Process are Dictum

Although the Dominos Court dismissed the action "without prejudice" based upon the primary jurisdiction doctrine, the Dominos Court's order made references to the violation of due process. (Order at 8.) Such references should be treated as

MANNINGLAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

dictum, however, because ultimately the Dominos Court dismissed Plaintiff's claims "without prejudice pursuant to the primary jurisdiction doctrine." (Order at 11.) Had the District Court dismissed such claims based on the violation of due process, such dismissal surely would have been "with prejudice."

Given that the Dominos court applied the primary jurisdiction doctrine, the Dominos Court's references to the telephone service affirmative defense are also dictum. Although the Dominos Court dismissed the action "without prejudice," the District Court's order addressed Defendant's affirmative defense via the existence of a purported telephone hotline for the visually impaired to call if they encountered problems with Defendant's website. (Order at 9.)

In *Target*, the defendant, Target Corp., raised the telephone service issue via a motion to dismiss, which was denied. The district court in *Target* held:

> "[T]he flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action. After plaintiffs state a claim—by alleging that the website is not accessible to the blind—the burden then shifts to defendants to assert, as an affirmative defense, that they already provide the information on Target.com in another reasonable format (such as over the phone). . . . Defendant's challenge is premature and the court declines to dismiss the action on this basis."

*Target*, 452 F. Supp. 2d at 956.

The Dominos Court's Order failed to address whether Defendant satisfied its burden of showing that making Dominos' website accessible in accordance with WCAG 2.0 Level AA Success Criteria would "fundamentally" alter the website service offered by Defendant. The Dominos Court's Order also failed to address whether Dominos had satisfied its burden of showing that providing an accessible website in accordance with WCAG 2.0 Level AA Success Criteria would result in an "undue burden" for Dominos. Without such findings showing that Dominos met *its*

*burden*, Defendant cannot prevail in invoking its affirmative defense under 42 U.S.C. § 12182(a)(2)(A)(iii).

### III.   SHOULD THE COURT GRANT DEFENDANT'S MOTION TO DISMISS, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

Based on the forgoing, Plaintiff respectfully requests that Defendant's motion to dismiss be denied in its entirety. However, should the Court determine that the motion should be granted, in whole or in part based on any pleading deficiencies, then Plaintiff respectfully requests leave to amend in accordance with the mandate that such leave be granted freely and liberally. *Eminence Capital, LLC,* 316 F.3d at 1052 (the policy in favor of permitting amendment is to be applied with "extreme liberality"). Where a more carefully drafted complaint *might* state a claim, a plaintiff *must be given at least one* more chance to amend the complaint before the district court dismisses the action with prejudice. *Silva v. Bieluch,* 351 F.3d 1045, 1048 (11th Cir. 2003); *DeCarlo v. Fry,* 141 F. 3d 56, 62 (2d Cir. 1998).

### IV. CONCLUSION

Based on the foregoing, it is respectfully requested that the Court deny Defendant's Motion in its entirety and that the Court grant such further and other relief as it deems appropriate.

Dated: May 22, 2017          **MANNING LAW, APC**

By: */s/ Joseph R. Manning, Jr. Esq.*
Joseph R. Manning, Jr., Esq.